UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

GINA MARIE FOUST,                )
                                 )
        Plaintiff,               )
                                 )
    vs.                          )     Case No. 2:22-CV-84-ACL
                                 )
MARTIN O'MALLEY,[1]              )
Commissioner of Social Security  )
Administration,                  )
                                 )
        Defendant.               )

## MEMORANDUM

Plaintiff Gina Marie Foust brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of her application for Disability Insurance Benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI, respectively, of the Social Security Act.

An Administrative Law Judge ("ALJ") found that, despite Foust's severe impairments, she was not disabled as she was capable of performing work existing in significant numbers in the national economy.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c).   A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

---

[1]Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley shall be substituted for Kilolo Kijakazi as the defendant in this suit.   *See* 42 U.S.C. § 405(g).

For the following reasons, the decision of the Commissioner will be reversed.

## I.  Procedural History

Foust filed her application for SSI on August 4, 2020 and her application for DIB on August 7, 2020.   (Tr. 253, 260.)   She claimed she became unable to work on April 4, 2020 due to bone spurs, back pain, anxiety, and depression.   (Tr. 281.)   Foust was 45 years of age at her alleged onset of disability date.   (Tr. 36.)   Her applications were denied initially.   (Tr. 106–07.) Her claims were denied by an ALJ on November 24, 2021.   (Tr. 9–26.)   On October 14, 2022, the Appeals Council denied Foust's claim for review.   (Tr. 1–3.)   Thus, the decision of the ALJ stands as the final decision of the Commissioner.   *See* 20 C.F.R. §§ 404.981, 416.1481.

In this action, Foust first argues that the ALJ "did not analyze the treating physician Dr. Arvin Abueg's opinion correctly under 404.1520."   (Doc. 13 at 6.)   She next argues that the "RFC constructed by the ALJ is not supported by the weight of the evidence."   *Id.* at 13.

## II.  The ALJ's Determination

The ALJ first found that Foust met the insured status requirements of the Social Security Act through June 30, 2025.   (Tr. 14.)   He stated that Foust had not engaged in substantial gainful activity since the alleged onset date of her disability.   *Id.*   In addition, the ALJ concluded that Foust had the following severe impairments: degenerative disc disease, mild degenerative changes in the shoulders, obesity, asthma, depression, and anxiety.   *Id.*   The ALJ found that Foust did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.   (Tr. 15.)

As to Foust's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned
> finds that the claimant has the residual functional capacity to

Page **2** of **19**

perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can never climb ladders, ropes, or scaffolds, and can occasionally kneel, crouch, crawl, stoop, and climb ramps and stairs.   She can have no exposure to whole-body vibration, dangerous, unprotected heights, or dangerous, unprotected, moving machinery.   She can perform no overhead tasks.   She can frequently reach, handle, finger, feel, push, and pull with both arms, but no pushing and pulling with her legs.   She can do simple, routine tasks with occasional, superficial interaction with co-workers and supervisors.

(Tr. 18.)

The ALJ found that Foust was unable to perform her past work as a food service manager, but was capable of performing other jobs existing in significant numbers in the national economy, such as a cleaner, hand packer, or production worker.   (Tr. 25–26.)   The ALJ therefore concluded that Foust was not under a disability, as defined in the Social Security Act from April 4, 2020 through the date of the decision.   (Tr. 26.)

The ALJ's final decision reads as follows: "Based on the application for a period of disability and disability insurance benefits protectively filed on August 4, 2020, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act."   *Id.*

## III.   Applicable Law

### III.A.  Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole.   42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002).   Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion.   *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001).   This

"substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted).   "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1.   The credibility findings made by the ALJ.

2.   The plaintiff's vocational factors.

3.   The medical evidence from treating and consulting physicians.

4.   The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5.   Any corroboration by third parties of the plaintiff's impairments.

6.   The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted).   The Court must also consider any evidence which fairly detracts from the Commissioner's decision.   *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999).   However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole.   *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v.*

*Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)).   "[I]f there is substantial evidence on the record as

a whole, we must affirm the administrative decision, even if the record could also have supported

an opposite decision."   *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal

quotation marks and citation omitted); s*ee also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974,

977 (8th Cir. 2003).   Put another way, a court should "disturb the ALJ's decision only if it falls

outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015)

(citation omitted).

**III.B.   Determination of Disability**

A disability is defined as the inability to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be expected to

result in death or that has lasted or can be expected to last for a continuous period of not less than

twelve months.   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905.   A claimant

has a disability when the claimant is "not only unable to do his previous work but cannot,

considering his age, education and work experience engage in any kind of substantial gainful

work which exists … in significant numbers in the region where such individual lives or in

several regions of the country."   42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social

Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the

regulations.   20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007).   First,

the Commissioner will consider a claimant's work activity.   If the claimant is engaged in

substantial gainful activity, then the claimant is not disabled.   20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner

looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, reaching out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on his ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements"

of the claimant's past relevant work.   20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4).   "RFC is a

medical question defined wholly in terms of the claimant's physical ability to perform exertional

tasks or, in other words, what the claimant can still do despite his or his physical or mental

limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks

omitted); *see* 20 C.F.R. § 416.945(a)(1).   The claimant is responsible for providing evidence the

Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is

responsible for developing the claimant's "complete medical history, including arranging for a

consultative examination(s) if necessary, and making every reasonable effort to help [the

claimant] get medical reports from [the claimant's] own medical sources."   20 C.F.R. §

416.945(a)(3).   The Commissioner also will consider certain non-medical evidence and other

evidence listed in the regulations.   *See id*.   If a claimant retains the RFC to perform past

relevant work, then the claimant is not disabled.   *Id*. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to

perform past relevant work, then the burden shifts to the Commissioner to prove that there is

other work that the claimant can do, given the claimant's RFC as determined at Step Four, and

his age, education, and work experience.   *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n. 5 (8th

Cir. 2000).   The Commissioner must prove not only that the claimant's RFC will allow the

claimant to make an adjustment to other work, but also that the other work exists in significant

numbers in the national economy.   *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004);

20 C.F.R. § 416.920(a)(4)(v).   If the claimant can make an adjustment to other work that exists

in significant numbers in the national economy, then the Commissioner will find the claimant is

not disabled.   If the claimant cannot make an adjustment to other work, then the Commissioner

will find that the claimant is disabled.   20 C.F.R. § 416.920(a)(4)(v).   At Step Five, even though

the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant.   *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a.   The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists.   *See* 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1).   If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent."   20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2).   The Commissioner must then rate the degree of functional loss resulting from the impairments.   *See* 20 C.F.R. §§ 404.1520a(b)(3), 416.920a(b)(3).   Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities.   *See id.*   Next, the Commissioner must determine the severity of the impairment based on those ratings.   *See* 20 C.F.R. §§ 404.1520a(c), 416.920a(c).   If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder.   *See* 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2).   This is completed by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental disorders.   *See id.*   If there is a severe impairment, but the impairment does not meet or equal the listings, then the Commissioner must prepare an RFC assessment.   *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

## IV.   Discussion

Foust's claims relate to the ALJ's evaluation of the opinion evidence and resulting RFC determination.   Specifically, Foust challenges the ALJ's findings regarding her physical

impairments.   As such, the Court's discussion will focus on Foust's physical impairments.

### A. Evaluation of Opinion Evidence

Foust first argues that the ALJ did not analyze the opinion of treating physician Dr.

Arvin Abueg correctly under Social Security regulations.

On August 26, 2021, Dr. Abueg filed an MSS detailing Foust's limitations resulting from

her impairments.   *See* (Tr. 787–91.)   Foust accurately summarizes Dr. Abueg's medical

conclusions in her brief as follows:

> Dr. Arvin Abueg…found that Plaintiff would only be able to stand
> or walk about two hours in an eight-hour workday and sit for about
> four hours.   He also found that she would need to change positions
> from sitting every 30 minutes and standing every 10 minutes and
> would need to walk around six times during the eight-hour
> workday for ten minutes each time.   She would also need to lie
> down at unpredictable times during the day when pain becomes
> unbearable even when sitting or standing.   All of this is due to her
> lumbar spondylosis and fibromyalgia.   Dr. Abueg further opined
> that Plaintiff could only twist, stoop, bend, climb stairs or ladders
> only occasionally and should never crouch.   She can frequently
> reach, handle, finger, feel and push with upper extremities, but
> only occasionally push/pull with her lower extremities.   Lastly,
> Dr. Abueg opined Plaintiff would miss more than four days a
> month of work, be off task 20% of the time and would need to take
> four unscheduled breaks a day due to chronic fatigue and pain.

(Doc. 13 at 7) (internal citations omitted); *see also* (Tr. 788–91.)

Foust argues that the ALJ did not analyze Dr. Abueg's MSS in accordance with 20

C.F.R. § 404.1520c, and—in particular—failed to "properly analyze the supportability and

consistency of the author of the medical source statement," as is required under that regulation.

(Doc. 13 at 7.)   The undersigned agrees.

Under the revised Social Security regulations,[2] the agency "[w]ill not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources."   20 C.F.R. §§ 404.1520c(a), 416.920c(b)(2).   Instead, the ALJ must assess the persuasiveness of all medical opinions and prior administrative medical findings[3]  using a number of factors, including 1) the supportability of the opinion with objective medical evidence and explanations; 2) the consistency of the opinion with evidence from other medical and nonmedical sources; 3) the relationship of the provider to the claimant, including the length, nature and frequency of treatment; 4) the specialization of the provider; and 5) other factors, including the source's familiarity with the Social Security guidelines.   *See* 20 C.F.R. § 404.1520c.

In evaluating the persuasiveness of a medical opinion, the factors of supportability and consistency are the most important for an ALJ to consider, and the ALJ must "explain how he considered the supportability and consistency factors ... in [the] determination or decision."   20 C.F.R. § 404.1520c(b)(2).   An ALJ's failure to address either the consistency or supportability factor in assessing the persuasiveness of a medical opinion requires reversal.   *Bonnett v. Kijakazi*, 859 Fed. Appx. 19, 20 (8th Cir. 2021) (unpublished) (per curium) (citing *Lucus v. Saul*, 960 F.3d 1066, 1069-70 (8th Cir. 2020) (remanding where ALJ discredited physician's opinion without discussing factors contemplated in Regulation, as failure to comply with opinion-

---

[2] The new regulations are applicable to Foust's claims because she filed her appeal after March 27, 2017.  *See* 20 C.F.R. §§ 404.1520c, 416.920c.

[3] "Prior administrative medical findings" are findings, other than the ultimate determination on whether a claimant is disabled, about medical issues made by the consultants at a prior level of review in the claimant's current claim based on their review of the evidence.   81 Fed. Reg. at 62,564; 20 C.F.R. § 404.1513(a)(5) (2017).

evaluation Regulation was legal error)).   ALJs need not explain in their decision how they

considered the other factors.   20 C.F.R. § 404.1520c(b)(2).

In his opinion, the ALJ concluded, in relevant part:

> [Dr. Abueg's August 26, 2021] assessment is not supported by the
> diagnostic findings on imaging or the clinical findings on physical
> or mental status examinations…Nor is it consistent with his
> unwillingness to prescribe narcotic pain medication, or the
> claimant's rejection of surgery in 2018 followed by engagement in
> substantial gainful activity, or her conservative treatment
> modalities since then.

(Tr. 24.)

As an initial matter, the undersigned notes that the ALJ did not separately analyze the

supportability and consistency factors.   Instead, the ALJ erred insofar as he conflated

supportability and consistency.   Supportability is a measure of the relevancy of "objective

medical evidence and supporting explanations *presented by a medical source* ... to support his or

her medical opinion(s)."   20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1) (emphasis added).

Consistency measures the agreeableness of medical opinions with "evidence from other medical

sources and nonmedical sources in the claim."   *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2).   Here,

the ALJ did not discuss each factor, but simply provided a brief analysis including the words

"supported" and "consistent" and cited no specific evidence in the record.   An "ALJ's sprinkling

of the words 'support' and 'consistent' in her cursory treatment of [medical] opinions is

insufficient to satisfy the Regulation's requirement that the ALJ 'explain' how she considered

these factors in determining the persuasiveness of a medical opinion."   *Martini v. Kijakazi*, No.

4:20 CV 1711 CDP, 2022 WL 705528, at *4 (E.D. Mo. Mar. 9, 2022).   The Regulation requires

"more than a conclusory statement as to the supportability and consistency factors so a reviewing

court can make a meaningful assessment of a challenge to an ALJ's evaluation of the

persuasiveness of various medical opinions."   *Hirner v. Saul*, No. 2:21-CV-38 SRW, 2022 WL

3153720, at *9 (E.D. Mo. Aug. 8, 2022).

Moreover, this error was not harmless, as the reasons cited by the ALJ for finding Dr.
Abueg's opinion not persuasive are not supported by substantial evidence, as will be discussed
below.

Foust first argues that the ALJ's statements regarding findings on imaging and Foust's
rejection of surgery reflect a misunderstanding of the nature of fibromyalgia or myofascial pain.
The undersigned points out that the ALJ did find degenerative disc disease as a severe
impairment, and that the ALJ's statement could apply to that impairment.   Indeed, Dr. Abueg
indicated that that his opinions were supported by Foust's diagnoses of "lumbar spondylosis" in
addition to fibromyalgia.   (Tr. 788.)   Nonetheless, the thrust of Foust's argument is clear: the
ALJ did not properly consider Foust's diagnoses of fibromyalgia or myofascial pain when
analyzing Dr. Abueg's opinions.

With regard to fibromyalgia, the ALJ explicitly considered but ultimately rejected Foust's
diagnosis of fibromyalgia at step two.   (Tr. 15.)   According to the ALJ:

> Treatment records mention fibromyalgia; however the claimant has
> not provided evidence from an acceptable medical source
> establishing this impairment by any medically acceptable clinical
> and laboratory diagnostic techniques.   Specifically, there is no
> evidence on this record of the requisite number of positive tender
> points or that other disorders that could cause the symptoms or
> signs were excluded.

(Tr. 15) (internal citations omitted).

Under the Social Security regulations—and as noted by the ALJ—in order for a claimant
to establish he or she has a medically determinable impairment, such impairment must result
from abnormalities "that can be shown by medically acceptable clinical and laboratory
diagnostic techniques."   20 CFR § 416.921.   Foust cites in her brief guidance from the Mayo

Clinic on the proper methods for diagnosing fibromyalgia.   (Doc. 13 at 8 n. 1.)   That guidance

is as follows:

> Diagnosing fibromyalgia is a two-stage process.   First, because many other disorders can mimic the symptoms of fibromyalgia, it's important that those be ruled out.   Blood tests and other diagnostic tests should be performed to confirm that the pain is not the result of another condition, such as arthritis, lupus, a connective tissue disorder or a thyroid disorder.
>
> The second step in fibromyalgia diagnosis is assessing an individual's symptoms using a tender point count and validated survey criteria, such as the Widespread Pain Index and Symptom Severity Scale.

Liza Torborg, *Mayo Clinic Q and A: Understanding myofascial pain syndrome and fibromyalgia*, MAYO CLINIC (Dec. 1, 2017), https://newsnetwork.mayoclinic.org/discussion/mayo-clinic-q-and-a-understanding-myofascial-pain-syndrome-and-fibromyalgia/.

> Myofascial pain syndrome is similarly diagnosed clinically as follows:
>
> Myofascial pain syndrome often can be identified based on symptoms and a physical examination.   During the exam, a health care provide may apply gentle pressure to the painful muscle, feeling for tense areas.   Certain ways of pressing on a tender point can elicit specific responses, such as a muscle twitch.

Torborg, *Mayo Clinic Q and A: Understanding myofascial pain syndrome and fibromyalgia*, https://newsnetwork.mayoclinic.org/discussion/mayo-clinic-q-and-a-understanding-myofascial-pain-syndrome-and-fibromyalgia/.

Even assuming the ALJ properly found that fibromyalgia had not been established as a

medically determinable impairment, he erred in failing to consider Foust's *additional* diagnosis

of myofascial pain syndrome when evaluating Dr. Abueg's opinions.   The medical record is

replete with references of myofascial pain syndrome in addition to her degenerative disc disease

and fibromyalgia, as summarized below:

Foust saw Dr. Abueg for a telehealth visit on April 8, 2020, for complaints of chronic low back pain beginning at least six months prior and occurring two to four times a day.   (Tr. 509.) The pain was present in the lumbar spine and thoracic spine and radiates to the right thigh.   *Id.* She rated the pain as a seven on a scale of one to ten, and indicated the pain was aggravated by bending, sitting, and twisting.   *Id.*   Foust has tried nonsteroidal anti-inflammatory drugs with no relief.   (Tr. 510.)   Imaging of the lumbar spine revealed no significant disc disease that would explain her pain, "which increases her possibility of having myofascial pain."   *Id.*   She had been off work since March 1, 2020, and would continue to be off work until she saw pain management.   *Id.*   On July 7, 2020, Foust presented to Dr. Abueg for follow-up of her lumbar and thoracic pain.   (Tr. 525.)   Dr. Abueg noted that Foust had seen pain management and was scheduled for repeat lumbar epidural steroid injections later that month.   *Id.*   She was still in pain and had difficulty walking.   *Id.*   On examination, Dr. Abueg noted decreased range of motion, tenderness, and decreased strength in the left shoulder; and decreased range of motion, tenderness, bony tenderness, and spasm in the lumbar back.   (Tr. 526.)   Dr. Abueg diagnosed her with myofascial pain, and chronic right SI joint pain.   (Tr. 527.)   He prescribed Voltaren[4] and Robaxin[5] for Foust's pain.   *Id.*   On August 6, 2020, Foust reported that she was let go from her job after her medical leave expired.   (Tr. 534.)   She had received two epidural steroid injections, and was still having severe lumbar pain and difficulty with ambulating and standing. *Id.*   Foust could not tolerate her prescribed oral pain medications.   *Id.*   On examination, Dr. Abueg again noted decreased range of motion, tenderness, and decreased strength in the left

---

[4]Voltaren is a nonsteroidal anti-inflammatory drug indicated to relieve joint pain from arthritis. *See* WebMD, http://www.webmd.com/drugs (last visited March 25, 2024).

[5]Robaxin is indicated for the treatment of muscle spasms and pain.   *See* WebMD, http://www.webmd.com/drugs (last visited March 25, 2024).

shoulder; and decreased range of motion, tenderness, bony tenderness, and spasm in the lumbar back.   (Tr. 535.)   Dr. Abueg prescribed a lidocaine patch for Foust's myofascial pain and joint pain and referred her to pain management.   (Tr. 536.)

Foust presented to nurse practitioner Jordan E. Hogan on September 3, 2020, for an initial consultation for pain complaints upon the referral of Dr. Abueg.   (Tr. 616.)   Foust described her pain as mostly across her low back and radiating to the bilateral hips to the posterior leg and down to her feet.   *Id.*   She also reported numbness and tingling of the lower extremities.   *Id.*   Foust indicated that her pain was constant and rated it as an eight on a scale of one to ten.   *Id.*   On examination, Mr. Hogan noted an antalgic gait; tenderness of the lumbar spine, lumbar paraspinals, and sacroiliac joints; and positive straight leg raise bilaterally.   (Tr. 618.)   Mr. Hogan found as follows as to myofascial pain syndrome:

> The following muscles (Right and Left erector spinae, serratus posterior, latissimus dorsi) produced a myofascial pain syndrome (MPS) during examination with findings of restriction of full range of motion of that muscle attachments from guarding, tenderness to palpation with active trigger points within a palpable taut band and a local taut response to snapping palpation producing a referred pain pattern.

*Id.*   Mr. Hogan noted that imaging from March 2020 showed some minimal spondylosis of the thoracic spine, and minimal spondylolisthesis at L4-5 with mild to moderate bilateral neuroforaminal narrowing.   (Tr. 618.)   Mr. Hogan stated that Foust's imaging was supported by exam findings of a "significant myofascial pain syndrome."   *Id.*   He noted that Foust's pain appeared to be "multifactorial at this time from a myofascial pain syndrome, sacroiliitis on the right and left, and lumbar radiculopathy with an underlying facet syndrome."   *Id.*   Mr. Hogan recommended a "multidisciplinary approach" and did not recommend "long-term narcotics."   *Id.*

On February 18, 2021, Foust presented to Dr. Abueg with complaints of chronic pain in the lumbar and thoracic spine for six months, which she described as aching and stabbing and unresponsive to non-steroidal anti-inflammatory medications.   (Tr. 685.)   Dr. Abueg again noted that Foust had undergone an x-ray and MRI of her lumbar spine with no significant disc disease that would explain her pain, "which increases her possibility of having myofascial pain." (Tr. 686.)   On examination, Dr. Abueg noted decreased range of motion, tenderness, and decreased strength of the left shoulder; tenderness of the left knee; and decreased range of motion, tenderness, bony tenderness, and spasm of the lumbar spine.   (Tr. 687-88.)   Dr. Abueg diagnosed Foust with myofascial pain and fibromyalgia, and prescribed Lyrica.[6]   (Tr. 688.)   On June 21, 2021, Foust presented to Dr. Abueg with complaints of shoulder, neck, and arm pain. (Tr. 741.)   On examination, Dr. Abueg noted tenderness, decreased range of motion, and decreased strength in both shoulders; tenderness, crepitus, pain with movement, and decreased range of motion of the neck; spasms, tenderness, and decreased range of motion of the lumbar back.   (Tr. 743.)   He diagnosed Foust with cervical spondylosis without myelopathy, myofascial pain, and chronic pain of both shoulders.   (Tr. 744.)

The Court finds that the ALJ erred in analyzing the persuasiveness of Dr. Abueg's opinions.   The ALJ first cited the lack of "diagnostic findings on imaging or the clinical findings on physical or mental status examinations, as evaluated above."   (Tr. 24.)   The ALJ provides no further explanation and does not cite to any evidence in the record.   As such, it is unclear whether the ALJ was referring to Dr. Abueg's own findings on examination (which would relate to the supportability factor) or to that of other providers (which would relate to the consistency

---

[6]Lyrica is indicated for the treatment of pain in people with fibromyalgia. (last visited March 25, 2024).

factor).   As to his own findings, between July 7, 2020, and June 21, 2021, Dr. Abueg noted abnormalities on examination, such as decreased range of motion, tenderness, and decreased strength in the shoulders; tenderness, crepitus, and decreased range of motion of the neck; decreased range of motion, tenderness, and spasm of the lumbar spine; and tenderness of the left knee.   (Tr. 526, 535, 687-88, 743.)   He consistently diagnosed Foust with myofascial pain syndrome beginning in July 2020.   In February 2021, Dr. Abueg added a diagnosis of fibromyalgia, and in June 2021 he included a diagnosis of cervical spondylosis without myelopathy.   (Tr. 688, 744.)   As explained by Dr. Abueg in his treatment notes, the lack of findings on imaging support the diagnosis of myofascial pain syndrome.   (Tr. 510, 686.) Despite these references in the record, the ALJ failed to discuss Foust's diagnosis of myofascial pain syndrome as supporting Dr. Abueg's opinions regarding Foust's limitations.

The ALJ also cited Dr. Abueg's unwillingness to prescribe narcotic pain medication. Although Dr. Abueg did not prescribe any narcotic pain medication, he did prescribe pain medications, including Voltaren, Robaxin, and Lyrica.   (Tr. 527, 688.)   Moreover, as Foust points out, Mr. Hogan stated that he did not recommend "long-term narcotics" for Foust's pain. (Tr. 618.)   As such, the failure to prescribe narcotic medications alone does not serve as a valid basis for the ALJ's finding as to supportability.

With regard to consistency, the only findings related to this factor was the ALJ's reference to Foust's "rejection of surgery in 2018 followed by engagement in substantial gainful activity," and her "conservative treatment modalities since then."   It is unclear how Foust's decision not to undergo lumbar surgery or her performance in substantial gainful activity *two years prior to her alleged onset of disability* is relevant.[7]   Notably, Foust was no longer working

---

[7]The ALJ appeared to rely on imaging and findings on examination prior to Foust's alleged onset

at the time of her alleged onset of disability of April 4, 2020, and through the date of the ALJ's decision.   These facts do not, therefore, support the ALJ's determination that Dr. Abueg's opinions are inconsistent with the record.   Foust's "conservative treatment" is similarly not inconsistent with Dr. Abueg's opinions because myofascial pain syndrome, like fibromyalgia, is not treated surgically.

Additionally, the ALJ did not discuss the fact that Dr. Abueg's diagnoses and findings are consistent with those of pain management nurse practitioner Mr. Hogan.   Mr. Hogan noted the following abnormalities on examination in September 2020: an antalgic gait; tenderness of the lumbar spine, lumbar paraspinals, and sacroiliac joints; and positive straight leg raise bilaterally. (Tr. 618.)   Additionally, Mr. Hogan set out the specific clinical findings on examination that established a diagnosis of myofascial pain syndrome.   *Id.*   Mr. Hogan concluded that Foust's imaging and exam findings were supportive of "significant myofascial pain syndrome."   *Id.*   He noted that Foust's pain appeared to be "multifactorial at this time from a myofascial pain syndrome, sacroiliitis on the right and left, and lumbar radiculopathy with an underlying facet syndrome."   *Id.*   This opinion is consistent with Dr. Abueg's opinion that Foust is limited due to a combination of lumbar spondylosis and myofascial pain syndrome and/or fibromyalgia.

The undersigned notes that, if the ALJ required further information about the bases of Dr. Abueg's opinions, he could have either contacted Dr. Abueg for clarification or obtained a consultative examination.   Social security hearings are to be non-adversarial, and an ALJ has a duty to develop the record fully and fairly.   *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005).

---

of disability in other parts of his opinion in assessing the severity of her impairments.   For example, he cites examination findings from 2018 to find Foust had a steady gait.   (Tr. 22, 422, 425.)

This duty applies even in cases where the claimant is represented by counsel.   *Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995).

In sum, the Court finds that the ALJ erred in analyzing the persuasiveness of the medical opinion evidence of treating physician Dr. Abueg.   This error affected the ALJ's RFC determination, which renders it without the support of substantial evidence.

### Conclusion

For the reasons discussed above, the Commissioner's decision is not based upon substantial evidence on the record as a whole and the cause is therefore remanded to the Commissioner for further consideration in accordance with this Memorandum and Order.   Upon remand, the ALJ shall consider whether Foust's diagnoses of fibromyalgia and myofascial pain syndrome are severe medically determinable impairments, properly evaluate the persuasiveness of the medical opinion evidence, obtain additional medical evidence if necessary, and formulate an RFC supported by substantial evidence.

s/*Abbie Crites-Leoni*_____
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 26th day of March, 2024.